**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

Eemou See and Sing See,

                Plaintiffs,

v.

Swagelok Company, a foreign corporation,

                Defendant.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Eemou See and Sing See, for their Complaint against Defendant Swagelok Company (hereinafter "Swagelok"), hereby respectfully allege as follows:

1.      This case arises out of an explosion that occurred on January 11, 2017 at a truck manufacturing facility in Dodge Center, Minnesota, where Plaintiff Eemou See was employed. Ms. See was severely burned as a result of an explosion caused by the failure of a component part of a truck's compressed natural gas (CNG) system, resulting in the escape of natural gas.

2.      The fugitive gas that caused the explosion was the result of a defective and unreasonably dangerous hose assembly in the CNG system of a truck to which the hose assembly was attached. Defendant Swagelok failed to properly design, manufacture, test and inspect the hose assembly, which caused the hose to separate from its fitting and allowed fugitive gas to escape and, as a result, is strictly liable for all harms and losses suffered by the Plaintiffs.

3.      Swagelok's fundamental and inexcusable fault implicates systemic failures in manufacturing, design, training, quality control, inspection and testing.

4.      As a result of the January 11, 2017 explosion, Eemou See was horrifically burned on her face, neck, torso, arms and fingers, resulting in the amputation of all of the fingers on her left hand and causing massive disfigurement to her entire upper torso.

1

## PARTIES AND JURISDICTION

5.      At all relevant times herein, Plaintiffs Eemou See and Sing See were husband and wife and were United States citizens and residents of the State of Minnesota, with a principal residence in Rochester, Minnesota.

6.      At all relevant times herein, Defendant Swagelok was a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in the City of Solon, County of Cuyahoga, State of Ohio. Swagelok is one of America's largest privately held companies, with annual revenue in excess of $2 billion.

7.      Defendant Swagelok is engaged in the business of designing, manufacturing, assembling, marketing, distributing and/or selling parts that are used throughout the United States, including the hose assembly involved in the January 11, 2017 explosion. Swagelok claims that it stocks "about 10,500 standard parts" at "225 locations worldwide."

8.      The United States District Court for the District of Minnesota has personal jurisdiction over Defendant Swagelok, which transacts business in the State of Minnesota and is registered with the Office of the Minnesota Secretary of State.

9.      Jurisdiction in this matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, is greatly in excess of $75,000.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## THE EXPLOSION OF JANUARY 11, 2017

11.      On the morning of January 11, 2017, Plaintiff Eemou See was working within the course and scope of her employment at McNeilus Truck and Manufacturing, Inc. ("McNeilus"), at a facility located at 524 County Road 34 East in Dodge Center, Minnesota.

12.     McNeilus is in the business of manufacturing and assembling CNG-powered refuse trucks and, upon information and belief, has done so thousands of times using the same processes and systems it utilized in this case, with no prior failures or explosions.

13.     The location within the McNeilus facility where the January 11, 2017 explosion occurred - identified as line 6 - included three separate areas where CNG-powered refuse trucks being assembled progress from east to west. As shown in the diagram below, trucks under assembly move from a paint and touch-up booth to a heated baking room and then to a showroom. The explosion on January 11, 2017 occurred in paint booth 6 (marked as R4 below).



14.     Plaintiff Eemou See was a production worker at McNeilus, whose duties included masking and taping trucks in preparation for painting.

15.     On January 11, 2017, Ms. See was on the job early in the morning and worked on line 2 until approximately 10:00 a.m., before being asked to work on line 5. Shortly thereafter, while Ms. See was in the area of line 5, she heard a popping sound and walked over to the interior door separating lines 5 and 6 to determine the cause.

16.     As Ms. See approached the paint booth door on line 6 and looked through the window, she saw something flapping around near the top of the truck and immediately sensed that something was wrong. Ms. See turned away from the door and started to run, but a

massive explosion knocked her to the ground and engulfed her in a fireball, which spread from

her back to the front of her body, burning her flesh. Ms. See's entire upper torso was on fire and

she remained aflame for several agonizing minutes. By the time the flames were extinguished,

Ms. See's skin was peeling from her body.

17.   According to the State Fire Marshal's report:

The explosion disrupted approximately 6 large overhead doors, blew out part of
the side wall of the baking room, burned and or blew around foam type filters on
various paint booth air exchange systems, scorched and burned random areas of
the ceiling and miscellaneous tools and contents nearby, dislodged part of the
sprinkler system, set off 9 sprinkler heads, and also was also responsible for the
injuries to six employees.

18.  The force of the explosion is evident in the surveillance video from inside the building:



19.  This portion of the surveillance video shows how quickly and completely the

building filled with smoke following the explosion:



20.   This portion of the surveillance video shows the tragic effect of the Defendant's hose failure: Ms. See on fire and running for her life away from the explosion and ensuing flames:



### THE CNG-POWERED TRUCK AND COMPONENTS

21.   The CNG-powered refuse truck involved in the explosion (similar to the one shown below, utilizing a rear-loading system to lift trash into the vehicle) was being assembled by McNeilus for Waste Management, a national disposal and recycling company.



22.     CNG-powered trucks do not have traditional gasoline engines, but instead run on compressed natural gas stored in pressurized cylinders atop the vehicle (in the area under the cowling marked by the blue arrow in the above photo). The CNG fuel system transfers the high-pressure natural gas from the fuel tanks to the engine.

23.     The CNG-powered refuse truck involved in the explosion on January 11, 2017 had four natural gas cylinders mounted on the top rear of the vehicle, connected via a manifold, with a high-pressure CNG hose extending from the manifold to the front of the vehicle, where the pressure is regulated and introduced into the engine fuel management system.

24.     The CNG-powered refuse trucks assembled at the McNeilus facility use components manufactured by other companies. In this case, the CNG module installed on the subject truck was supplied by Agility Fuel Systems ("Agility"). Agility's components were comprised of sub-assemblies, which included CNG hoses and fittings facilitating movement of the compressed natural gas from the high pressure in the CNG storage tanks on top of the truck to the lower operating pressure required for the truck engine.

25.     Defendant Swagelok designed and manufactured the CNG hoses and fittings on the subject truck. Swagelok produces and sells a variety of application-specific hose assemblies, including those shown below used in CNG systems.



26.    Upon information and belief, the black Swagelok hose depicted above is the same type of hose that was involved in the January 11, 2017 explosion. Defendant Swagelok also manufactures and sells the fittings that are attached to the hoses by Swagelok personnel and which are sold as integrated hose assemblies to be connected to other components in the truck's CNG system.

27.    As indicated in the report from the Dodge County Sheriff's office regarding the January 11, 2017 explosion, it was noted that "one particular hose has come unfastened from the CNG system" on the subject refuse truck, with the report further describing that "the hose appears to have pulled out of the factory crimped connection."

28.    The image below depicts the fitting manufactured by Swagelok which attached to the hose that separated from the subject truck's CNG module on January 11, 2017, resulting in the release of pressurized natural gas that caused the explosion.



29.     The image below shows the interior of the Swagelok fitting (viewed from the vantage point of the right side of the above-pictured fitting) involved in the explosion.



30.     The process by which the Swagelok hose is designed to be mated to the fitting involves fully inserting the hose into the space between the inner (smaller diameter) barb and the outer (larger diameter) collar and then compressing the outer metal collar against it. Circumferential rings on the inner barbs within the fitting engage with the hose after compression of the outer collar in order to create a leak-proof fitting able to withstand the pressure rating for the hose. A more technical definition of this process is as follows:

> A fitting attachment method utilizing a number of fingers or dies mounted in a radial configuration. The dies close perpendicular to the hose and fitting axis, compressing the collar, ferrule, or sleeve around the hose.

31.     The image below, from Swagelok marketing materials, shows a cross section of a properly seated hose-fitting connection:



32.     The failure mode leading to the January 11, 2017 explosion can be summarized as follows: for the joining process to work (i.e., to create a leak-proof seal able to withstand the pressure for which the hose is rated and which the CNG system demands), the Swagelok hose must be inserted all the way into the fitting before the mechanical pressure of the compression process is applied. If the hose is not fully inserted, circumferential rings distal to the hose insertion depth are unable to engage with the hose, resulting in a partial connection which is unable to withstand the system's operating requirements.

33.     Swagelok's failure to ensure there was a properly-seated hose-fitting connection in the hose assembly caused the sudden, catastrophic separation of the hose from the fitting on January 11, 2017, resulting in the release of highly pressurized gas into the confined space where the subject refuse truck was located.

34.     The image below of the subject refuse truck taken after the January 11, 2017 explosion shows the remnants of this failure mode: the hose end identified by the left-most orange arrow blew off the fitting identified by the right most arrow:



35.     The above view shows the truck with the cowling cover removed; the image below shows the hose separation before removal of the cowling cover:



36.     Close-ups of the hose and fitting ends can be seen in the photographs below. Technical analysis confirmed the lack of engagement of the hose assembly due to Defendant Swagelok's failure to fully engage and seat the hose within the fitting prior to compression:



37.    As shown in the above photographs taken after the explosion, the "failed" end of the hose reveals a complete dislodgement of the hose from the crimp connection of the metallic fitting end (interior view of the hose end, at left; note the only two circumferential ring indentations from the proximal end of the barb tip).

38.    This failure mode was so evident that it was noted by the state fire marshal at the time of the initial investigation, long before consulting experts confirmed it:

I do not know anything about the CNG system at this time, but it appears that the hose has become undone and may have released some of the natural gas product into the room. If the hose is pulled towards the CNG unit and angled towards the burn patterns on the top and rear of the cover of the CNG unit-the heat and or fire could have come from the hose if it was for some reason angled in this direction.

39.    The failure of the Swagelok hose assembly on January 11, 2017 stands in sharp contrast to the claims and guarantees Swagelok makes about its products. Among other representations, Swagelok claims in a promotional video that technicians "inspect each end connection" while "every hose is pressure tested with water to assure proper assembly and performance" and that "vigorous inspection and 100% testing ensures receipt of a high quality and reliable hose." (https://youtu.be/XRqYRd2FE8c?t=124)

40.    In fact, if Swagelok actually did what it claimed to do, the failure to properly seat the hose would have been easily detected and would have prevented the January 11, 2017 explosion and the catastrophic injuries suffered by Eemou See. Among other reasons, a properly assembled hose has a simple marking – which should be made before the hose is inserted on and into the fitting – showing the proper insertion depth.



41.    In the photograph above of an exemplar Swagelok hose assembly, the green marking on the fabrication just outside the metal fitting was made to ensure that the hose was fully inserted into the coupling prior to compression of the metal coupling onto the hose. The Swagelok hose assembly which failed on January 11, 2017 lacked such a marking to ensure proper insertion depth. As a result, the subject hose was not fully inserted into the metal fitting and there was not enough clamping length to securely connect the hose to the fitting.

## EEMOU AND SING SEE PRIOR TO JANUARY 11, 2017

42.    At the time of the January 11, 2017 explosion, Eemou See was 49 years old and had lived in the United States for over half of her life. After fleeing her native village in war-torn Laos as a young girl and migrating to a refugee camp in Thailand, where she spent three years of her life, Ms. See eventually met and married Sing See, and together the Sees lived as subsistence farmers in a small village in Thailand, raising four children.

43.    Eemou and Sing See eventually returned to a Thai refugee camp, in the hopes of being able to immigrate to the United States and improve the lives of their children. After enduring great hardship, the Sees finally arrived in Minnesota in 1991, penniless and lacking any formal education or transferable job skills, but with an incredible work ethic.

44.    Over the next twenty-six years, Eemou and Sing See became U.S. citizens, worked two and sometimes three jobs at a time and raised children with professions including a pastor, a police officer and a registered nurse. The See family is pictured below:



45.    In 2007, Eemou See joined her husband in working at McNeilus (where he had been employed for over ten years). After starting out as a janitor, Ms. See became a masker-taper, often working 50-70 hours per week.

46.    Despite her work obligations, prior to the explosion, Ms. See was the center of her large extended family, which included ten grandchildren.



**DAMAGES**

47.     As a direct and proximate result of the January 11, 2017 explosion, Eemou See sustained severe burn injuries which have permanently scarred and disfigured her body. The catastrophic injuries she suffered in the explosion caused her to endure unimaginable pain and suffering and other damages and pecuniary losses, as outlined herein.

48.     The burn injuries Eemou See sustained in the explosion covered nearly half of her total body surface and caused her to be hospitalized for over two months at Regions Hospital in St. Paul, including almost seven weeks in the burn unit. Following her discharge, Ms. See has required assistance with virtually all of her activities of daily living.

49.     Among other items of damages suffered by Eemou See, she has:

   a.  undergone thirteen separate surgeries and many more excruciatingly painful debridements;

   b.  suffered the amputation of each of the fingers on her left hand (shown in the photograph below); and



c. had massive disfigurement involving her extremities, face and torso (shown from behind in the photograph below);



50.     The medical and related expenses Ms. See has sustained are greatly in excess of $1 million and her damages will continue for the remainder of her life, as she will require numerous future surgical procedures and extensive medical care and therapy. She will also never be able to work again.

51.     In addition to her severe burns and obvious disfigurement, Ms. See has experienced virtually all of the severe psychological sequelae associated with those conditions, including delirium, confusion, sadness, hopelessness, anxiety, nightmares and persistent depression. Ms. See's trauma and emotional distress is continuing in nature, has been manifested by physical symptomology, has impacted the lives of both Plaintiffs and has otherwise been debilitating and severely traumatizing.

52.     As a direct and proximate result of Plaintiff Eemou See's injuries from the explosion, she has sustained the following items of damages, among others, for which Plaintiffs are entitled to compensation:

a.  Past, present and future hospital, medical, pharmacy and rehabilitation care and treatment expenses.
b.  Past, present and future permanent disability.
c.  Past, present and future permanent disfigurement.
d.  Past, present and future physical pain and suffering and other mental and psychological injuries.
e.  Past, present and future loss of enjoyment of life.
f.  Past, present and future loss of earnings and earning capacity.
g.  Past, present and future loss of economic opportunity.
h.  Other economic or out-of-pocket losses to be determined.

53.     Plaintiff Sing See has also suffered a loss of services, companionship, society and consortium, by reason of the injuries and damages sustained by his wife, Plaintiff Eemou See.

54.     As a result, Plaintiffs have sustained losses, injuries and damages in an amount vastly in excess of Seventy-Five Thousand Dollars ($75,000.00).

**JURY TRIAL DEMAND**

55.     Plaintiffs demand a jury trial as to all issues of fact herein.

**COUNT ONE**
**NEGLIGENCE – DESIGN, MANUFACTURE AND WARNINGS**

56.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

57.     Defendant Swagelok is involved in the business of designing, manufacturing, distributing, testing and inspecting hose assemblies utilized in CNG systems, including but not limited to, the hose assembly involved in the January 11, 2017 explosion.

58.     Defendant Swagelok knew, or in the exercise of ordinary and reasonable care should have known, of the significant dangers posed by a defective and improperly-seated hose assembly utilized in a CNG system, including that a separation of the hose in such a system could result in catastrophic consequences.

59.     Defendant Swagelok knew, or in the exercise of ordinary and reasonable care should have known, that the subject hose assembly was defective and unreasonably dangerous for the use and purpose for which it was intended and lacked adequate warnings.

60.     At all times material herein, Defendant Swagelok owed certain duties to persons who could foreseeably be harmed by a defective and improperly-seated hose assembly utilized in a CNG system, including the extreme risk of harm resulting from a separation of the hose.

61.     At all times material herein, Defendant Swagelok had a duty to use reasonable care in the design, manufacture, testing and inspection of the subject hose assembly, including having safeguards in place to prevent the risk of separation of the hose, and had a duty to provide reasonably adequate warnings and instructions to all those who could foreseeably be impacted by a defective and improperly-seated hose assembly utilized in a CNG system, including warnings regarding the risk of separation of the hose.

62.     Notwithstanding such duties and obligations, Defendant Swagelok failed to exercise reasonable care in the following ways, among others:

    a.  Failing to follow recommendations, requirements, standards, guidelines and regulations and/or recommended practices regarding proper selection, assembly, testing and inspection of the subject hose assembly;

    b.  Failing to properly engineer and manufacture the hose assembly;

    c.  Failing to follow recommendations, requirements, standards, guidelines and regulations and/or recommended practices regarding appropriate warnings, instructions and safety precautions to be provided to purchasers, installers and end users of such hose assemblies

    d.  Failing to use proper components in the hose assembly to ensure that the hose could not separate from the fitting under the conditions which existed on January 11, 2017;

    e.  Failing to reasonably warn end-users of the hose assembly about the extreme danger resulting from a hose separation;

    f.  Failing to design the hose assembly in such a manner to ensure that the hose could not separate from the fitting under the conditions which existed on January 11, 2017;

g. Designing, manufacturing, distributing, selling, and/or supplying a product that was unreasonably dangerous;

h. Designing, manufacturing, distributing, selling, and/or supplying a product which failed to contain elements necessary to make the hose assembly safe for its intended use and/or contained elements which made the hose assembly unsafe for its intended use;

i. Designing, manufacturing, distributing, selling, and/or supplying a product that posed an unreasonable risk that fugitive gas could escape;

j. Failing to implement adequate and necessary policies concerning the inspection and testing of hose assemblies;

k. Failing to adequately warn of the risk of separation of the hose assembly and the risk of escaping fugitive gas;

l. Failing to properly train employees and personnel involved in the manufacture, design, testing and inspection of the hose assembly;

m. Failing to utilize proper testing and inspection procedures related to the hose assembly before placing it in the stream of commerce.

63.     As a direct and proximate result of Defendant Swagelok's carelessness, negligence and other liability-producing acts and omissions as outlined herein, Plaintiff Eemou See suffered serious, severe and disabling injuries including, but not limited to, serious burns, scarring, incapacity, psychiatric and emotional injuries, as well as other injuries, the full extent of which are not yet known, some or all of which are permanent in nature.

64.     As a direct and proximate result of Defendant Swagelok's carelessness, negligence and other liability-producing acts and omissions, Plaintiff Eemou See has in the past required - and will in the future require - medical treatment and care, and has in the past and will in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, rehabilitation and other attempts to alleviate and/or cure her condition.

65.     As a direct and proximate result of Defendant Swagelok's carelessness, negligence and other liability-producing acts and omissions, Plaintiff Eemou See has in the past and will in the future suffer pain, scarring, disfigurement, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of

life, and restrictions on her ability to engage in normal activities and pleasures of life, as well as other intangible losses.

66.     As a direct and proximate result of Defendant Swagelok's carelessness, negligence and other liability-producing acts and omissions, Plaintiff Eemou See has been prevented and will be prevented in the future from performing her usual duties, activities and occupations, has suffered a loss of earnings and will suffer a future loss of earning capacity.

67.     As a direct and proximate result of Defendant Swagelok's carelessness, negligence and other liability-producing acts and omissions, Plaintiff Sing See has suffered a loss of services, companionship, society and consortium, by reason of the injuries and damages sustained by his wife, Plaintiff Eemou See.

68.     As a result, Plaintiffs have sustained losses, injuries and damages in an amount vastly in excess of Seventy-Five Thousand Dollars ($75,000.00).

**COUNT TWO**
**STRICT LIABILITY – DESIGN, MANUFACTURE AND WARNING**

69.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

70.     At all material times herein, Defendant Swagelok was engaged in the business of designing, manufacturing, testing, inspecting, distributing, supplying and/or selling parts to be utilized in CNG systems, including the hose assembly which caused the explosion on January 11, 2017.

71.     The hose assembly involved in the January 11, 2017 explosion was designed, manufactured, distributed, tested, inspected, sold, supplied and/or placed in the general stream of commerce by Defendant Swagelok.

72.     The subject hose assembly was expected to and did reach users and consumers without substantial change in the condition in which it was designed, manufactured, distributed, tested, inspected, sold and/or supplied.

73.     At all material times herein, the subject hose assembly was used as it was intended to be used or in a manner that Defendant Swagelok could have reasonably anticipated.

74.     The subject hose assembly was designed, manufactured, sold and/or supplied by Defendant Swagelok in a defective and unreasonably dangerous condition and with inadequate warnings, as detailed in the foregoing paragraphs of this Complaint.

75.     The defects in the subject hose assembly existed at the time it left Swagelok's possession or control and were such that the hose assembly was defective, unreasonably dangerous and unsuitable for use in the CNG system of the refuse truck involved in the January 11, 2017 explosion.

76.     The hose assembly designed, manufactured, distributed, tested, inspected, sold and/or supplied by Defendant Swagelok was defective due to inadequate warnings or instructions because Swagelok knew or should have known through testing, scientific knowledge or otherwise that the subject hose assembly created a high risk of bodily injury and serious harm to all those who could foreseeably be impacted by separation of the hose from the fitting.

77.     The hose assembly designed, manufactured, distributed, tested, inspected, sold and/or supplied by Defendant Swagelok was defective and unreasonably dangerous in design, manufacture or formulation in that, when it left the hands of Defendant Swagelok, the hose assembly had not been adequately inspected or tested and posed a risk of serious bodily injury from a resulting failure or of the hose from the fitting.

78.     As a direct and proximate result of the defective and unreasonably dangerous hose assembly designed, manufactured, distributed, tested, inspected, sold and/or supplied by Defendant Swagelok, which directly and proximately caused a massive explosion, Plaintiff Eemou See was severely injured in the January 11, 2017 explosion and Plaintiffs have sustained significant injuries and damages which are permanent and continuing.

79.     The injuries sustained by Plaintiff Eemou See as a result of the separation of the hose and the escape of fugitive gas leading to an explosion could and should have been reasonably foreseen by Swagelok.

80.     Defendant Swagelok is strictly liable for the injuries and damages suffered by Plaintiffs, as described in the foregoing paragraphs.

## COUNT THREE
## BREACH OF WARRANTY

81.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in the preceding Paragraphs of this Complaint as if set forth herein in their entirety.

82.     As a manufacturer and seller of the hose assembly which caused the explosion on January 11, 2017, Defendant Swagelok expressly and impliedly warranted that the hose assembly was safe to use and was reasonably fit for the general uses and purposes for which it was sold, that it was properly tested and inspected and that it was free of any defects that would create an unreasonable risk of injury to all those who could foreseeably be impacted by the hose assembly and that Defendant Swagelok had fully and properly warned and/or educated potential users of the risks posed by the hose assembly, including of the separation of the hose from the fitting.

83.     Upon information and belief, prior to January 11, 2017, Defendant Swagelok made express or implied representations regarding the safety of its products and its practices, including that the subject hose assembly was safe for the use for which it was intended.

84.     Defendant Swagelok breached these implied and/or express warranties in that the Swagelok hose assembly which was part of the CNG system on the refuse truck involved in the explosion of January 11, 2017 was not safe or fit for its intended use, was improperly tested or inspected and was otherwise defective and unreasonably dangerous.

85.     Plaintiff Eemou See was a third-party beneficiary to the express or implied warranties Defendant Swagelok made to others.

86.     Plaintiff  and  others  to  whom  Swagelok  made  express  or  implied  warranties, relied on the skill and judgment of Defendant Swagelok with regard to the manufacture, design, inspection  and  testing  of  the  subject  hose  assembly  utilized  in  the  refuse  truck's  CNG  system and relied on the express or implied warranties made by Defendant Swagelok.

87.     As a direct and proximate result of Defendant Swagelok's breaches of express or implied warranties, Plaintiff Eemou See was seriously injured on January 11, 2017 and Plaintiffs suffered the injuries and damages described in the foregoing paragraphs.

**WHEREFORE,** Plaintiffs pray for judgment against Defendant Swagelok as follows:

A.     As to all counts, for judgment against Defendant Swagelok in amounts to  be  proven  at  trial,  such  amounts  in  excess  of  the  jurisdictional minimum limits of this court, so as to constitute just, reasonable and adequate compensation of Plaintiffs for all general, special, incidental and consequential damages incurred, or to be incurred, by Plaintiffs as  the  direct  and  proximate  result  of  the  acts  and  omissions  of Defendant;

B.     For  the  opportunity  to  amend  or  modify  the  provisions  of  this Complaint  as  necessary  or  appropriate  after  additional  or  further discovery is completed in this mater, and after all appropriate parties have been served;

C.     For pre-judgment and post-judgment interest as allowed by law;

D.     For attorneys' fees, expenses and costs of this action, as allowed by law; and

E.     For such other and further relief as the Court deems just and proper.

Dated: <u>November 28, 2017</u>                    **PRITZKER HAGEMAN, P.A.**

By: <u>/s/ Eric Hageman</u>
        Fred Pritzker (MN #88456)
        Eric Hageman (MN #258180)
        45  South 7th Street
        Suite 2950
        Minneapolis, MN 55402-1652
        (612) 338-0202
        fhp@pritzkerlaw.com
        eric@pritzkerlaw.com