UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re: McNeilus Manufacturing Explosion Coordinated Litigation

Case No. 17-cv-5237-PJS-KMM

Filed as to *See, et al. v. Swagelok, et al.*, 17cv5237; and *McNeilus Truck and Mfg. v. Swagelok Co.*, 18cv997

ORDER

---

This matter is before the Court on Swagelok Company's and San Diego Valve and Fitting Company's ("San Diego Valve") Joint Motion to Certify Question to Minnesota Supreme Court and to Stay Proceedings.[1] [ECF No. 131.] For the reasons that follow, Swagelok and San Diego's joint motion is denied.

I. Relevant Factual Background

This is a products-liability case arising out of an explosion that occurred at the McNeilus Truck and Manufacturing, Inc., facility in Dodge Center, Minnesota, on January 11, 2017. McNeilus manufactures large trucks for waste removal purposes that are powered by a compressed natural gas ("CNG") system, with the CNG stored in pressurized cylinders on top of the vehicles. During the manufacturing process, after the CNG trucks are painted, they are moved into a heated baking room so that the paint can cure.

---

[1] At the May 9, 2019 motions hearing, counsel for the defendants withdrew the request to stay these proceedings at this time. The Court denied the motion to stay on the record, noting that the possibility of a stay may be at a later date.

1

On January 11, 2017, McNeilus was finishing a CNG vehicle for Waste Management, a national disposal and recycling company. Four natural gas cylinders were mounted on the top of the truck, connected to a manifold with a high-pressure CNG hose. Swagelok and San Diego Valve manufacture and sell the high-pressure hose and the hose assemblies used on this vehicle. The truck was inside the baking room during the morning of January 11th.

At approximately 10:00 a.m., a massive explosion occurred inside the factory. Several workers were injured, two very seriously, and the facility suffered significant damage. Eemou See was the most severely injured. She and her husband, Sing See, brought this lawsuit against Swagelok and San Diego Valve under negligence and strict-liability theories for the defective design and manufacture of the hose and hose assemblies, and for failure to attach proper warnings regarding use of the equipment. The Sees allege that Swagelok and San Diego Vale defectively manufactured the hose assemblies, causing the CNG to escape the canisters. Specifically, they claim that the gas was able to escape the hose assembly because the high-pressure hose was improperly seated in a fitting. The gas came into contact with a spark in the baking room, causing the explosion.

Swagelok, San Diego Valve, and McNeilus all agree that Ms. See is not at fault for her injuries, but they dispute who among them is responsible for the explosion. Swagelok and San Diego Valve deny that their hose assemblies are defective, and filed a third-party complaint against McNeilus, alleging that McNeilus is responsible for the explosion. They contend that McNeilus unreasonably allowed the CNG truck to be brought indoors without first defueling the vehicle. They claim that the industrial heater

in McNeilus' baking room raised the temperature near the CNG cylinders on the truck above 200 degrees Fahrenheit for an extended time prior to the explosion. These factors, according to Swagelok and San Diego Valve, were the cause of the explosion rather than a problem with the CNG hose. Moreover, even if they are found to be somewhat at fault, Swagelok and San Diego Valve assert that their responsibility for the harm in this case will be less than 50%.

Meanwhile, McNeilus sharply contests Swagelok and San Diego Valve's allegations. [*See* McNeilus Mem. at 5–7, ECF No. 136.] McNeilus argues that: (1) the hose was under-inserted into its fitting at the time of the explosion, causing the hose to separate and allowing the release of CNG; (2) testing of the non-involved end of the same hose reveals that it was also significantly under-inserted in its fitting; and (3) McNeilus has used the same process and the same oven for curing the paint in the baking room for many years at its plant with no prior instance of a CNG release in the paint building. [*Id.*] McNeilus, therefore, takes the position that Swagelok and San Diego Valve are fully responsible for the explosion and Ms. See's injuries. Indeed, McNeilus has filed its own complaint against Swagelok and San Diego for the damage caused to the McNeilus factory.

### Procedural History

The Sees filed their original Complaint in November of 2017. [ECF No. 1.] On May 22, 2018, this case was consolidated with several that were filed by other McNeilus employees who were injured in the January 11, 2017 explosion. [Order Granting Consolidation (May 22, 2018).] The Court has held several status conferences with the parties to discuss the progress of the litigation, to aid in their efforts at

resolution, and to resolve certain discovery disputes. This case is not in its earliest stages, and significant work has already been accomplished by the parties. Nevertheless, the schedule anticipates that there is more to be done. The deadline for completion of fact discovery is still a month away. Expert disclosures and discovery will not be completed until September 20, 2019, and dispositive motions, which are anticipated, must be served, filed, and heard by October 15, 2019. [Third Am. Scheduling Order (Mar. 5, 2019), ECF No. 123.] The case is expected to be trial-ready in December 2019.

In addition to litigation, there have been meaningful efforts to resolve all of the cases arising from the explosion at McNeilus. All parties participated in two days of private mediation in January 2019 with retired Magistrate Judge Arthur Boylan. Then, the Court held a global settlement conference on April 10, 2019 for the cases that were not resolved at the mediation. Although many of the cases that arose from this tragedy have now been settled, the Sees, Swagelok, and San Diego Valve were unable to come to a resolution. The day before the undersigned held the April 10th settlement conference, Swagelok and San Diego filed the pending motion to certify a question to the Minnesota Supreme Court. [ECF No. 131.]

## II. The Motion to Certify

Swagelok and San Diego Valve argue that the Court should certify the following question to the Minnesota Supreme Court:

> When a worker is injured through the combined fault of the employer and third-party tortfeasors, can the third-party tortfeasors be held jointly and severally liable for payment of the entire verdict amount if, when the employer's fault is compared, they are neither individually nor in the aggregate more than 50% at fault?

4

[Defs.' Mem. at 1, ECF No. 133.] The defendants assert that they have structured their defense to demonstrate that McNeilus is solely, or at least 50%, at fault for Ms. See's injuries based on the holding of *Gaudreault v. Elite Line Services*, 22 F. Supp. 3d 966 (D. Minn. 2014). In *Gaudreault*, United States District Judge Joan N. Ericksen concluded that when an injured employee sues a third-party tortfeasor, the third party is only jointly and severally liable for paying an entire award of damages "if [the third party] is found to be more than 50% at fault." *Id.* at 981. However, the Minnesota Court of Appeals recently reached the opposite conclusion in *Fish v. Ramler Trucking, Inc.*, 923 N.W.2d 337 (Minn. Ct. App. 2019).[2] The court of appeals concluded that, in such circumstances, a third-party tortfeasor can be held liable for the entire amount of a verdict even if the jury finds that the third party's fault is less than 50%. *Id.* at 340–44.

The importance of this legal question to the present litigation is obvious. If the rule followed in *Gaudreault* is correct, and Swagelok and San Diego Valve persuade a jury that they are less than 50% at fault, they would only be required to pay a fraction of the damages that may be awarded to the Sees. If, on the other hand, *Fish* states the correct rule of law, Swagelok and San Diego Valve could be required to pay the entire verdict if the jury finds them to be in any way at fault, even if they are still considerably less at fault than McNeilus. *Gaudreault* and *Fish* are at odds, and although the Minnesota Supreme Court has now granted review in *Fish*, it has not previously answered the question. Swagelok and San Diego Valve's joint motion asks this Court to give the

---

[2] The Minnesota Supreme Court granted review in *Fish* on April 16, 2019. http://macsnc.courts.state.mn.us/ctrack/docket/docketEntry.do?action=edit&deID=1031177&csNameID=86884&csInstanceID=105809&csIID=105809.

5

Minnesota Supreme Court the chance to resolve the uncertainty created by these opposing decisions. For the reasons explored below, that motion is denied.[3]

### A. Legal Standard

Minnesota has adopted the Uniform Certification of Questions of Law Act ("QLA"). Minn. Stat. § 480.065. Pursuant to the QLA, a federal court may certify a question of law to the Minnesota Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of [the State of Minnesota]." Minn. Stat. § 480.065, subd. 3.

> If a federal court certifies a question of law, the order must include:
>
> (1) the question of law to be answered;
>
> (2) the facts relevant to the question, showing fully the nature of the controversy out of which the question arose;
>
> (3) a statement acknowledging that the Supreme Court of [Minnesota], acting as the receiving court, may reformulate the question; and
>
> (4) the names and addresses of counsel of record and the parties appearing without counsel.

*Id.* § 480.065, subd. 6(a). The Minnesota Supreme Court is not required to accept a certified question. *Id.* § 480.065, subd. 3 (providing that the supreme court "may

---

[3] The Sees oppose the motion to certify, arguing in part that *Fish* is so clearly correct and consistent with settled Minnesota law that there is "no uncertainty" to be resolved. [Pl.'s Opp'n at 3, 9, ECF No. 137.] The Court disagrees with this assessment. The *Fish* and *Gaudreault* decisions are both well-reasoned, grounded in precedent, and persuasive. While the plaintiffs may be correct that the holding of *Fish* will ultimately be affirmed by the Minnesota Supreme Court, the opposite outcome is just as possible. It is an overstatement of the clarity of the legal landscape to describe the issues as "well-settled."

answer" a certified question); *see also id.* § 480.065, subd. 7 (providing for the supreme court to "notify the certifying court of acceptance or rejection of the question").

Whether to certify a question under the QLA is a question committed to the federal courts' sound discretion. *See Friedlander v. Edwards Lifesciences, LLC*, No. 16-CV-1747 (SRN/KMM), 2016 WL 7007489, at *1 (D. Minn. Nov. 29, 2016), ("It is clear, however, that the decision ultimately 'rests in the sound discretion' of the district court.") (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)), *certified question answered,* 900 N.W.2d 162 (Minn. 2017). The key factor is whether the federal court is "genuinely uncertain about a question of state law." *Johnson v. John Deere Co., a Division of Deer & Co.*, 935 F.2d 151, 153 (8th Cir. 1991); *Peterson v. Scottsdale Ins. Co.*, 409 F. Supp. 2d 1139, 1144 n.2 (D. Minn. 2006) (declining to certify a question where the governing authority was "sufficiently clear to allow for our independent interpretation" of the Minnesota Civil Damages Act). In the absence of a close question, "a federal court should not avoid its responsibility to determine all issues before it." *Shakopee Mdewakanton Sioux Community v. City of Prior Lake, Minn.*, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985). Finally, the federal courts should only use their power to certify "sparingly." *Friedlander*, 2016 WL 7007489, at *1.

### B. Analysis

For two reasons, the Court declines to invoke its authority to certify a question to the Minnesota Supreme Court in this case. First, the Court finds that certification of the question would be premature. The motion to certify here is premised upon the possibility that a jury would find that Swagelok and San Diego Valve together are less than 50% at fault. As noted above, however, there is significant dispute about the

7

percentage of fault attributable to McNeilus, Swagelok, and San Diego Valve. Discovery is ongoing, dispositive motions have yet to be filed, and the case is many months away from trial. Though Swagelok and San Diego Valve confidently allege that their products are not at all responsible for Ms. See's injuries, it remains entirely possible that a jury could find them to be primarily at fault for the explosion. *See* Minn. Stat. § 604.02, subd. 1 (providing that parties severally liable for harm must contribute to awards "in proportion to the fault attributable to each," but that a person greater than 50% at fault is "jointly and severally liabile for the whole award"). The facts relevant to the proposed question are far from settled. Certification of the question crafted by the defendants at this point would essentially ask the Minnesota Supreme Court to issue an advisory opinion as to the law that would govern allocation of damages in the event of one possible jury verdict. However, if Swagelok and San Diego Valve's prediction about their percentage of fault is incorrect, the answer to the certified question will ultimately have no bearing on how an award of damages is apportioned in this case. The entire certification procedure would waste the State of Minnesota's judicial resources and the time and energy of the parties.

None of the cases cited by Swagelok and San Diego in their memorandum certified a question of law where the legal issue had potentially significant impact, but had not yet become ripe.[4] For example, in *Friedlander*, United States District Judge

---

[4] Swagelok and San Diego also cite *Johnson v. John Deere Co.*, 935 F.2d 151 (8th Cir. 1991), and *Dammann v. Progressive Direct Ins. Co.*, No. 15-cv-3149 (MJD/FLN), 2016 WL 4196816 (D. Minn. May 31, 2016). Both of these cases involve denials of requests for certification of a question of law. Neither can be read to suggest that certification is appropriate at a stage of litigation where a legal issue has not yet become ripe.

8

Susan R. Nelson granted a motion to certify a question to the Minnesota Supreme Court regarding the effect of an amendment to the Minnesota Whistleblower Act ("MWA") on the plaintiff's claims. 2016 WL 7007489, at *5. The plaintiff's employer, Edwards, moved for judgment on the pleadings, arguing in part that Friedlander's whistleblower claim failed as a matter of law under existing precedent because Friedlander had not exposed any illegality, but merely reported something about which Edwards already knew. *Id.* at *1, 4. Meanwhile, Friedlander argued that a 2013 amendment to the MWA legislatively overruled the cases relied upon by Edwards. *Id.* at *4. Because the issue was raised in a motion for judgment on the pleadings, the question before Judge Nelson was whether, taking Mr. Friedlander's factual allegations as true, Edwards was entitled to judgment as a matter of law. *See id.* at *2. In particular, the court noted: "[i]n light of the procedural posture, the facts relevant to resolution of this matter are uncontested...." *Id.* (citing *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of N. Am.*, 627 F.2d 853, 855 (8th Cir. 1980) (discussing standards governing a motion under Fed. R. Civ. P. 12(c))). Unlike the situation facing the court in *Friedlander*, here the facts relevant to resolution of the proposed question are vigorously contested.[5]

Second, the Court finds certification in this case is unnecessary and imprudent because the Minnesota Supreme Court granted review in *Fish*. The question raised by Swagelok and San Diego Valve is almost certain to be answered by the Minnesota

---

[5] *See* McNeilus Mem. in Opp'n to Mot. to Certify at 5–7 (arguing that the evidence does not support apportioning more than 50% of fault to McNeilus based on an examination showing the Swagelok hose was under-inserted into the fitting), ECF No. 136.

Supreme Court because it is squarely presented by the appeal in *Fish*. While it is *possible*, as the defendants allege, that the *Fish* court might reverse its grant of review or frame the opinion in a way that avoids answering the critical question common to both *Fish* and this litigation, such outcomes are far less likely than the court issuing an opinion that resolves the damages-allocation issue and settles whether the lower court's ruling in *Fish* or Judge Ericksen's ruling *Gaudreault* is correct.

Swagelok and San Diego Valve argue that the Minnesota Supreme Court's grant of review in *Fish* favors certification here because it would give them a chance to present their view of the issue to be decided in that case. They claim to be entitled to a "seat at the table" for the *Fish* decision because of its potential importance to this case. This argument is ultimately unpersuasive. Swagelok and San Diego Valve essentially seek certification so that they can intervene and offer legal argument in the *Fish* appeal. However, they offer no support, and this Court is not aware of any, for the proposition that the certification procedures in the QLA may be invoked by parties in ongoing federal district court litigation who want to weigh in on a pending state court appeal. Indeed, if Swagelok and San Diego Valve were defending this case in state court, there would be no procedural mechanism for "intervening" in the *Fish* appeal from the discovery stage of similar, but entirely unrelated litigation. The certification statute should not be employed to create such a vehicle here.

Swagelok and San Diego Valve also argue that certification will allow the Minnesota Supreme Court to see the unfair consequences of adopting the *Fish* rule in a case with facts as "egregious" as this one—they posit that it would be unfair to find them liable for the entire award when their percentage of fault will likely be as low as

1%. Again, the Court is not persuaded. Not only is it sheer speculation that the apportionment of fault in this case would lead to an egregious outcome if *Fish* remains good law, but *Fish* itself presents a similarly stark factual scenario. *Fish* involves a jury verdict that found the third-party tortfeasor to be only 20% at fault and an employer to be 75% at fault. 923 N.W.2d at 339 ("The case was tried to a jury, which found Wells [the employer], Ramler [the third party], and Fish [the plaintiff] causally negligent and apportioned fault 75% to Wells, 20% to Ramler, and 5% to Fish."). Even without certification here, the Minnesota Supreme Court is certainly capable of imagining scenarios in which a third-party tortfeasor is assigned well under 20% fault, and the *Fish* rule would require payment of the entire award. There is also no indication in the record that counsel representing the third-party tortfeasor in *Fish* is incapable of vigorously advocating the same position that Swagelok and San Diego Valve take in this case. This is particularly true since the Minnesota Supreme Court will also have the benefit of briefing from at least two amici. *Fish v. Ramler Trucking Inc., et al.*, No. A18-0143 (Minn. May 2, 2019) (granting amici motions of Minnesota Defense Lawyers Association and Minnesota Association for Justice), http://macsnc.courts.state.mn.us/ctrack/docket/docketEntry.do?action=edit&deID=1034125&csNameID=86884&csInstanceID=105809&csIID=105809.

Because the question Swagelok and San Diego Valve seek to certify is ultimately going to be answered in *Fish*, it is only a matter of time before the parties in this case

have the assistance of a settled legal landscape. Because clarification of the legal issue is on the horizon and the motion is premature, the certification motion is denied.[6]

## ORDER

For all the foregoing reasons, Swagelok and San Diego's Joint Motion to Certify Question to Minnesota Supreme Court and to Stay Proceedings [ECF No. 131] is **DENIED**.

Date: May 17, 2019

*/s/ Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

---

[6] Though there is currently a December 2019 trial-ready date in this case, it is difficult to say when a trial may actually take place. It is also uncertain whether the Minnesota Supreme Court will have issued its decision in *Fish* ahead of any trial date. If the parties here are unable to resolve the litigation ahead of trial, the Court can revisit the question of a stay down the road.