UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: McNeilus Manufacturing Explosion Coordinated Litigation

Case No. 17-cv-5237-PJS-KMM

Filed as to *See, et al. v. Swagelok, et al.*, 17cv5237

ORDER

This matter is before the Court on the Motion to Amend the Complaint to Add Claims for Punitive Damages filed by the plaintiffs, Eemou and Sing See. [ECF No. 139.] As explained below, the Sees' motion to amend is denied.

I. Allegations in the First Amended Complaint[1]

McNeilus manufactures large trucks for waste removal purposes that are powered by a compressed natural gas ("CNG") system. The gas is stored in pressurized cylinders on top of the vehicles. During the manufacturing process, after the CNG trucks are painted, they are moved into a heated baking room so that the paint can cure.

On January 11, 2017, McNeilus was finishing a CNG vehicle for Waste Management. The truck had four CNG cylinders atop the vehicle, which were connected to a manifold with a high-pressure hose manufactured by Swagelok Company ("Swagelok") and distributed by San Diego Valve and Fitting Company ("San Diego Valve").

---

[1] The current operative pleading in the Sees' case is the First Amended Complaint [ECF No. 62], which the Court summarizes here.

1

At the time of the events giving rise to this lawsuit, Eemou See was a production worker at a McNeilus facility. Around 10:00 a.m. on January 11th, a massive explosion occurred while the Waste Management truck was in the baking room. The explosion caused serious injuries to several people and severely damaged the McNeilus building. Ms. See suffered burns over nearly half of her body and the amputation of each finger on her left hand.

In the aftermath of the explosion, the Dodge County Sheriff's Office and the state fire marshal investigated its cause. The sheriff's report noted that a hose came unfastened from the CNG system—the hose appeared to have pulled out of the factory-crimped connection. The fire marshal's initial investigation similarly suggested that the hose became "undone and may have released some of the natural gas product into the room." [First Am. Compl. ¶ 44.]

Ms. See and her husband brought this lawsuit against Swagelok and San Diego Valve under negligence and strict-liability theories. They allege that the defendants defectively designed and manufactured the hose and hose assemblies. They also allege that Swagelok and San Diego Valve provided inadequate warnings with their products regarding how to use them safely. The Sees claim that the CNG hose connecting the cylinders to the manifold on the truck was not properly inserted into the fitting; if it had been, the hose would not have decoupled from the fitting, releasing natural gas into the baking room. The Sees also claim that Swagelok and San Diego Valve failed to properly test the hose assembly, which would have caught the flaw prior to the explosion.

## II. Motion to Amend Complaint to Add Claims for Punitive Damages

The Sees ask the Court to allow them to amend their complaint so they can seek punitive damages from Swagelok and San Diego Valve. [ECF No. 139.] The defendants oppose the motion, arguing that the proposed amendment is futile. For the reasons set forth below, the Sees' motion is denied.

### A. Legal Standard

Except in situations where amendment is permitted as a matter of course or the parties agree, neither of which apply here, a party may amend its pleadings only with leave of court. Fed. R. Civ. P. 15(a)(2). Federal courts should grant leave to amend freely "when justice so requires." *Id.* Courts will, however, deny leave to amend for several reasons, including: "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015 (8th Cir. 2015) (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). In this case, only the futility of the proposed amendment is at issue.[2]

---

[2] Under Minnesota law, a complaint cannot be amended to add a claim for punitive damages unless the motion to amend is supported by prima facie clear and convincing evidence that a defendant has shown deliberate disregard for the rights and safety of others. *See Ulrich v. City of Crosby*, 848 F. Supp. 861, 866–69 (D. Minn. 1994) (discussing the standards applicable to a motion to amend under Minn. Stat. § 549.191). Though this District has long applied Minn. Stat. § 549.191 when plaintiffs seek leave to add a claim for punitive damages, the defendants recognize that most recent decisions have concluded that amendment is properly governed by the Rule 15. [Swagelok Opp'n at 5–8; San Diego Opp'n at 11–13.] Because the standards for amendment under Rule 15 and Minn. Stat. § 549.191 conflict, the Court concludes that Rule 15 applies here. *See, e.g., Barry v. Consolidated Asset Recovery Sys.*, 2019 WL 351339, at *2 n.1 (D.
(*footnote continued ...*)

When determining whether to deny amendment because a proposed amendment is futile, a court must "reach the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). Under Rule 12(b)(6), courts look only at the sufficiency of the allegations in the proposed amended complaint to determine whether it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's futility analysis in this context asks "whether [the Sees' proposed amendment] states a plausible claim for punitive damages in light of *substantive* Minnesota law." *Shank v. Carleton College*, No. 16-cv-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018) (emphasis in original); *Barry*, 2019 WL 351339, at *4 (same). Minnesota's substantive law makes punitive damages available to a plaintiff upon a showing "that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a). Deliberate disregard occurs when "the defendant has knowledge of facts or intentionally disregards facts

---

Minn. Jan. 29, 2019) ("In conformity with other recent decision in this District, the undersigned concludes that Rule 15 and not Minn. Stat. § 549.191 controls the adjudication of motions to amend."); *see also Selective Ins. Co. of S.C. v. Sela*, 353 F. Supp. 3d 847, 855–63 (D. Minn. 2018) (concluding Minn. Stat. § 604.18, which imposes similar pleading requirements for adding claims of bad-faith denial of insurance benefits, conflicts with Fed. R. Civ. P. 8 and 15); *but see Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB) (D. Minn.) [Doc. No. 354] (Brisbois, Mag. J.) (finding the court is required to apply Minn. Stat. § 549.191).

4

that create a high probability of injury to the rights or safety of others." *Id.* § 549.20, subd. 1(b).

### B. Proposed Amendments

The starting point for the Court's analysis is the Sees' Proposed Second Amended Complaint, which contains eleven new paragraphs setting forth the factual basis for the plaintiffs' punitive damages claim. [Proposed Second Am. Compl. ("PSAC") ¶¶ 48–58, ECF No. 138 (redlined version).] The Sees allege that Swagelok and San Diego Valve were aware of a high probability of harm to others for the following reasons: (1) before the January 11, 2017 explosion at McNeilus, both defendants knew that under-inserted hoses present significant risks; (2) the defendants had identified flaws in their manufacturing processes that led to under-inserted hoses; and (3) the defendants failed to take adequate measures to prevent under-inserted hoses from entering the marketplace.

The Sees point to a July 2013 incident in which an under-inserted hose "blew off" its assembly. [PSAC ¶ 49 ("In July of 2013, a Swagelok hose that was not properly pre-assembled blew off an installed hose.").] After that incident, Swagelok responded by requiring more detailed inspections of hoses assembled at Swagelok. [PSAC ¶ 50.] Specifically, Swagelok "began requiring second-person inspection of all hoses" at its own facility, but it allegedly did not require its distributors to do the same. [PSAC ¶ 50.] The Sees claim that Swagelok hoses continued to be manufactured and sold by distributors who were using an older process that Swagelok knew had the potential to blow out from their fittings. [PSAC ¶ 50.]

The Sees also base their proposed claim for punitive damages on the discovery of under-inserted hoses in April and June of 2016 at San Diego Valve. In April that year, San Diego Valve learned that a temporary employee assembled four natural gas hoses that failed conductivity testing because the end of the hose failed to contact a conductive eyelet that was seated inside the fitting.[3] [PSAC ¶ 52.] All four hoses were eventually found to be under-inserted. [PSAC ¶ 52.] In June 2016, "several more" hoses assembled at San Diego Valve by a different employee failed conductivity testing and were found to be under-inserted as well. [PSAC ¶ 53.] In response to these 2016 events, San Diego Valve "changed its assembly process" and began requiring conductivity testing at an earlier step in the manufacturing of each hose. [PSAC ¶ 55.]

The Sees claim that even though Swagelok and San Diego Valve knew that a significant number of hoses had been assembled with the process that predated San Diego Valve's switch to performing conductivity tests on all hoses prior to crimping, "neither Swagelok nor [San Diego Valve] took any action to contain the problem and continued to market and sell hoses that had been manufactured under the defective process." [PSAC ¶ 56.] Swagelok and San Diego Valve did not try to determine if other hoses that were previously assembled had the same under-insertion problem, and they

---

[3] "Conductivity testing" is not described in the Proposed Second Amended Complaint, though the allegations suggest that a conductive eyelet should make contact between the hose and the inside of the fitting. [PSAC ¶ 52.] The plaintiffs indicate that conductivity testing can identify hoses that are under-inserted. [Pls.' Mem. at 5 n.3.] The defendants argue that a failure of conductivity testing does not necessarily reveal an under-insertion problem both because hoses that are fully inserted can fail conductivity testing, and because hoses that are under-inserted may pass. [Swagelok Mem. at 16-17; San Diego Valve Mem. at 6 n.1.]

did not issue a recall or provide post-sale warnings to customers or end-users who were using hose assemblies that were manufactured under the older process. [PSAC ¶¶ 57-58.]

### C. Analysis

For at least three reasons, despite taking the plaintiffs' allegations as true, they are insufficient to show that Swagelok or San Diego Valve exhibited a deliberate disregard for the rights or safety of others.[4] The facts set forth in the Proposed Second Amended Complaint simply fail to establish that the conduct of either defendant showed deliberate disregard for the safety of others.

#### 1. Prompt Response

First, the plaintiffs' punitive-damages theory is flawed because the facts alleged suggest that Swagelok and San Diego Valve acted promptly in response to the incidents that arguably put them on notice that their hoses might suffer from an under-insertion problem. After Swagelok became aware of an under-insertion issue with one hose in

---

[4] The Sees submitted matters outside the pleadings in connection with their motion to amend. Because the Court has analyzed the sufficiency of the proposed amended pleading under the futility standard, the allegations in the Proposed Second Amended Complaint control the analysis. The Sees' affidavits and exhibits were not embraced by, incorporated into, or attached to the proposed pleading, so they are beyond the record that may be considered by the Court. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526-27 (8th Cir. 2017). Therefore, the Court's conclusion that the proposed amendment is futile is not based on the evidentiary record. Nevertheless, the Court also reviewed the broader record, and concludes that even had the amended complaint itself been strengthened with additional detail from the supplemental record, the outcome of the motion to amend would be the same. In other words, the problem here is one of substance, not of form.

April 2013,[5] it began requiring two-person inspections of all hoses. And San Diego Valve tested every hose after manufacture but before sale, and sent any hoses identified as flawed to Swagelok for further analysis. When several hoses failed conductivity testing at San Diego Valve three years later in April and June 2016, San Diego Valve started requiring mid-assembly conductivity testing on all hoses. These facts do not show that in the face of a serious risk of harm, Swagelok and San Diego Valve intentionally disregarded that risk or acted with indifference to it; instead the facts alleged suggest that they tried to address the issues of which they were aware. *See Rogers v. Mentor Corp.*, No. 12-cv-2602 (SRN/SER), 2018 WL 2215519, at *8 (D. Minn. May 15, 2018) (providing that the substantive punitive damages statute in Minnesota "requires (1) knowledge of or an intentional disregard of facts that make injury to the plaintiffs' rights probable; and (2) action despite such knowledge") (internal quotation marks omitted).

Of course, the Court does not suggest that the defendants' conduct absolves them of all responsibility for the accident that caused Ms. See's injuries, and the Court offers no commentary here on the strengths or weaknesses of the underlying claims. Indeed, accepting them as true, the new allegations in the Proposed Second Amended Complaint reasonably support an inference that Swagelok and San Diego Valve's response to the under-insertion issue was negligent. But, of course, punitive damages

---

[5] There are no allegations in the Proposed Second Amended Complaint to suggest that San Diego Valve was aware of the incident in April 2013 or was even one of Swagelok's distributors at that time. Therefore, the Court has not considered the April 2013 incident when evaluating whether the plaintiffs have alleged a plausible claim for punitive damages against San Diego Valve.

8

are not available simply because a defendant is negligent. Here, the conduct of Swagelok and San Diego Valve described in the amended pleading does not demonstrate a deliberate or intentional disregard of the rights and safety of others.

### 2. Awareness of High Probability of Injury

Second, the plaintiffs' proposed amendment would not survive a motion to dismiss because it does not show that Swagelok and San Diego Valve were aware of a high probability that their products could cause injuries. *See* Minn. Stat. § 549.20, subd. 1(b). The plaintiffs allege that the defendants must have been aware of such a risk. Certainly, it is reasonable to infer from the allegations here that an under-inserted, high-pressure hose assembly could allow gas to escape a CNG system, creating significant safety risks. However, the Proposed Second Amended Complaint does not support the separate inference that the defendants were aware that under-inserted hoses routinely eluded the defendants' quality-control measures and entered the market. According to the Sees' pleading, Swagelok was aware of one under-inserted hose that "blew off" in the field in 2013. For three years after that incident, there are no allegations that Swagelok or San Diego Valve received even one report that their hoses had an under-insertion problem. Given that the plaintiffs allege Swagelok is one of America's largest privately held companies with significant market share [*see* PSAC ¶¶ 6–7], the identification of a single occasion where an under-inserted hose failed in the field prior to the tragedy in this case does not state a plausible claim that the defendants were aware of a high probability of injury to others.

The next "incidents involving under-inserted hose assemblies at [San Diego Valve]" [Pls.' Mem. at 2], did not come up until April and June 2016, prompting San

Diego Valve to change its testing process. The three-year gap suggests not only that the problem the plaintiffs identified is uncommon, but also that San Diego Valve's existing testing and inspection processes could identify under-insertion problems before hoses made it into the into the stream of commerce.[6]

These same reasons also undermine the plaintiffs' argument that Swagelok and San Diego Valve showed deliberate disregard for the safety of others because they failed to issue a recall or to warn end-users that they may have received hoses that were under-inserted. [PSAC ¶ 58; Pls.' Mem. at 2, 9.] If anything, the record demonstrates that the defendants were aware that their testing program was catching under-inserted hoses before sale. Because the allegations fail to show that either of the defendants had knowledge of facts indicating a high probability of injury, the failure to issue a recall or provide post-sale warnings is not indicative of a deliberate disregard for others' safety.[7]

---

[6] The plaintiffs' assertion that the defendants were aware that "numerous hoses assembled with the prior process that failed to detect under-inserted hoses had been placed in the stream of commerce" [PSAC ¶ 56], is conclusory rather than factual, and therefore is not the type of allegation that can support the motion to amend.

[7] The defendants argue that the failure-to-recall allegations are unhelpful to the Sees because Minnesota law does not recognize a manufacturer's duty to issue a recall and because this is not a special case in which a post-sale duty to warn would be recognized. [See Swagelok Mem. at 19–20 & n.55.] The defendants essentially suggest that unless Minnesota law would support a separate underlying tort claim for the manufacturer's post-sale conduct, the manufacturer's action or inaction cannot legally form the basis of a claim for punitive damages. In *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004 (D. Minn. 2003), the court rejected an argument that the manufacturer exhibited deliberate disregard by failing to issue a recall, simply noting that Minnesota has not recognized any duty to recall or retrofit a product. *Id.* at 1016. However, *Berczyk* offers little reasoning to support the proposition advanced by the defendants, and the issue has not been substantially briefed in this proceeding. The Court does not

(*footnote continued ...*)

### 3. *Olson v. Snap Products*

Finally, the Court is not persuaded by the plaintiffs' reliance on *Olson v. Snap Prods., Inc.*, 29 F. Supp. 2d 1027 (D. Minn. 1998). If anything, a careful reading of *Olson* demonstrates why the showing made by the plaintiffs in this case is inussificient to support a claim for punitive damages. In *Olson*, the defendant manufactured an aerosol "fix a flat" tire inflator and marketed it as containing a "NON-EXPLOSIVE FORMULA." *Id.* at 1029. Mr. Olson was injured by an explosion that occurred when he attempted to weld a tire rim attached to a tire that contained the defendant's product. *Id.* Though the inflator had a label advertising that the product was non-explosive, the record provided support for punitive damages because the defendant was aware of serious safety risks that contradicted its marketing claims. For example, the manufacturer used a propellant that it confirmed was unsafe and had previously criticized as "highly flammable" when it was used by a competitor. *Id.* at 1030–31. Third-party testing showed the propellant was extremely flammable, the defendant's internal investigations revealed concerns about the product's ability to cause bodily harm or death, and before Mr. Olson's accident occurred, the defendant was sued twice for injuries resulting from tire explosions during rim welding. *Id.* at 1032–33. Despite all of this, the defendant

---

rely upon this argument in determining that the Sees' proposed amendment is futile. However, the Coutr doubts that a manufacturer's failure to offer post-sale warnings or issue a recall where a high probability of injury exists is as irrelevant to the question of deliberate disregard as the defendants now argue. 54 Am. Jur. *Trials* 443 § 20 (May 2019 Update) ("A manufacturer's failure to redesign or recall or reduce the risk of a known danger has been the predominant basis for imposing punitive damages in products liability litigation.").

continued marketing the product as containing a non-explosive formula and failed to change its labeling to accurately reflect the well-known risks, supporting an inference that the defendant acted with deliberate disregard because it elevated its own interest in maintaining a market advantage over the safety of others. *See id.* at 1037–39 and 1038 n.3.

In several respects, the rather astonishing facts supporting the motion to amend in *Olson* stand in stark contrast to the allegations in the Proposed Second Amended Complaint here. This case obviously lacks the presence of previous lawsuits brought against the manufacturer for essentially the same type of injury alleged in the Sees' complaint. There are no allegations here that Swagelok or San Diego Valve were aware that their hoses in the field were likely to be under-inserted the way that the manufacturer in *Olson* knew that its widely distributed product was extremely flammable. And the plaintiffs have not alleged facts supporting an inference that Swagelok and San Diego Valve essentially sought to maintain economic advantage in the market by misleading end-users into thinking their hoses were not prone to do the exact thing that prior incidents and testing revealed was likely to occur. The plaintiffs may wish their case were more like *Olson* for the purpose of putting punitive damages on the table, but the allegations in the proposed amended pleading simply do not support the comparison.

III. Order

Based on the discussion above, the Court concludes that the Sees' proposed punitive damages claim is futile because the allegations in the Proposed Second Amended Complaint do not show that Swagelok or San Diego Valve engaged in conduct

showing a deliberate disregard for the rights or safety of others. Accordingly, **IT IS HEREBY ORDERED THAT** the plaintiffs' Motion to Amend the Complaint to Add Claims for Punitive Damages **[ECF No. 139]** is **DENIED**.

Date: June 6, 2019                                   *s/Katherine Menendez*
                                                     Katherine Menendez
                                                     United States Magistrate Judge